UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICKEY YOUNG, | |
| Plaintiff, | Civil Action No. 05-3399 (NLH) |
| v. | |
| CITY OF WILDWOOD, JOSEPH FISHER, DANIEL SPIEGEL, PAUL A. ZIELINSKI and JOHN DOES(S) | **OPINION** |
| Defendants. | |

Appearances:

HAROLD BRUCE SHAPIRO
SHAPIRO & SHAPIRO, PA
1063 EAST LANDIS AVENUE
PO BOX 787
VINELAND, NJ 08362-0787
*Attorney for Plaintiff Mickey Young*

A. MICHAEL BARKER
JOSEPH M. SCOTT
BARKER, SCOTT & GELFAND
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221
   and
AMES R. BIRCHMEIER
POWELL, BIRCHMEIER & POWELL, ESQS.
1891 STATE HIGHWAY 50
PO BOX 582
TUCKAHOE, NJ 08250-0582
*Attorneys for Defendants City of Wildwood, Joseph Fisher, Daniel Spiegel and Paul A. Zielinski*

**HILLMAN, District Judge**

Before the Court is defendants' motion for summary judgment. For reasons explained below, defendants' motion is granted.

## I.  JURISDICTION

We exercise subject matter jurisdiction over plaintiff's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  We exercise supplemental jurisdiction over plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

## II.  BACKGROUND

The following facts were either alleged by plaintiff in his complaint or testified to at his criminal trial held on February 4, 2004, or in deposition taken on May 2, 2006:

On September 26, 2003, around 10:00 p.m., plaintiff traveled to Wildwood, New Jersey and had one or two alcoholic drinks at the Sportsmen Bar.  After about an hour or two he left the Sportsmen Bar and proceeded to at least three other bars where he consumed additional alcoholic drinks.  Plaintiff states that he had a total of four or five drinks and was not intoxicated.  He also testified that he was wearing a white shirt that night but did not recall if he was wearing a white bandanna or headband around his head, although he does wear such items.

Plaintiff testified that around 3:15 a.m. on September 27, 2003, he had left the bar and was walking through a parking lot behind Alfe's Restaurant when he was approached by a man, later

identified as Frank Alfe,[1] who asked him if he "had any shit" which plaintiff interpreted as street slang for whether he had any drugs.  Plaintiff responded "no, I got nothing" and continued walking to return to the Sportsmen Bar to retrieve his vehicle.

Plaintiff then alleges that Officer Spiegel approached him in a police vehicle at the corner of New Jersey and Schellenger Avenues, which is near Alfe's Restaurant, and got out of the vehicle and asked plaintiff his name.  Plaintiff testified that he did not respond.  Spiegel asked him his name again and again plaintiff did not respond.  Spiegel then told plaintiff that there had been a burglary in the parking lot to which plaintiff did not provide any comment.  Shortly thereafter, Officer Zielinski arrived.  He also asked plaintiff his name twice and plaintiff did not respond.  Plaintiff testified that he responded after the officers asked him about three of four times for his name, and told them his name was Mickey Young.  One of the officers informed him again about an attempted burglary in the parking lot at Alfe's Restaurant.  He could not specifically recall if the officers gave him the description of the suspect.

Plaintiff testified that the officers then put handcuffs on him and "[f]rom what [he] understood [the handcuffs were] for their safety or something like that."  He also stated that they

---

[1] Frank Alfe was a chef/waiter at his mother's restaurant, Alfe's Restaurant, in Wildwood, New Jersey.

kept telling him about the burglary in the parking lot.  When asked if he responded, plaintiff said, "I don't know what I actually said to them.  Alls I know is at the time that I didn't break into any cars.  So more than likely, I probably said, I didn't do it, I didn't break into any car."  Plaintiff testified in deposition that he was then taken to the Wildwood Police Station, but testified earlier during his trial on February 4, 2004, that they did go back to the restaurant parking lot before driving to the police station.

After arriving at the police station, the officers took a set of fingerprints from the defendant.  Plaintiff denies that he kept pulling his finger away so that the officer could not get a clear picture of his finger prints and that the officer had to use four print cards before he got a clear set.  He testified that he could not recall pulling his finger away so that the officer could not get a good fingerprint.  In response to whether Officer Zielinski told him that his refusal to sign the fingerprint card would result in an additional charge of obstruction of justice, plaintiff responded "maybe he did, maybe he didn't."  Plaintiff was then taken to the Cape May County Jail and released after he posted bail.

Subsequently, the charge of attempted burglary was downgraded by the Cape May County Prosecutor's Office to a charge of disorderly conduct.  Following a trial held on February 4,

2004, in the Wildwood Municipal Court, the judge found plaintiff not guilty of the disorderly conduct charge and guilty of the obstruction of justice charge.  Plaintiff filed an appeal of the guilty verdict and was acquitted, without opinion, of the obstruction charge by the Superior Court of New Jersey.

According to testimony from Officer Zielinski, after he received the call from the dispatcher about an attempted burglary, he drove to Alfe's Restaurant.  Frank Alfe told him that a black male wearing a white shirt and white bandanna or nylon skull cap was trying to break into his mother's car that was parked in the lot behind the restaurant.  Officer Zielinski also stated that Alfe told him that he just drove past the suspect.  Officer Zielinski got back into his car and radioed this information to Officer Spiegel.  Officer Spiegel testified that he saw plaintiff at the corner of New Jersey and Schellenger Avenues and that plaintiff fit the description of the suspect.  Officer Spiegel states that he stopped plaintiff and asked him his name and told him about the attempted burglary to which plaintiff did not respond.  Officer Zielinski states that he then approached plaintiff who was standing with Officer Spiegel and asked him his name several times but that he refused to answer.  Defendants, however, state that plaintiff finally responded that his name was "Mickey Mouse."

Defendants state that after plaintiff was placed in

5

handcuffs he was put in a police car and driven approximately 500 feet from the corner of New Jersey and Schellenger Avenues to the parking lot behind Alfe's Restaurant. They further state that Frank Alfe positively identified plaintiff at that time as the man he saw attempting to break into his mother's car.

In his deposition, Frank Alfe confirmed his identification of plaintiff. He also testified that he had been alerted by the dishwasher at Alfe's Restaurant that someone was trying to break into his mother's car and went out the back door of the restaurant and saw plaintiff standing by his mother's car at the driver's side door. Mr. Alfe testified that he asked plaintiff what he was doing and plaintiff responded "I'm getting out of here, don't worry about what I'm doing." Mr. Alfe states that he then went inside and called the police.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. Claims Against City of Wildwood and Joseph Fisher**

Defendants argue that plaintiff has not plead any facts to support a claim that defendant City of Wildwood is liable under 42 U.S.C. § 1983 because he is not able to prove that an official police or custom was the cause of his alleged constitutional violation or that the City of Wildwood failed to adequately train its officers.[2]  Defendants also argue that plaintiff cannot maintain a claim against defendant Joseph Fisher in either his official or personal capacity as Chief of Police.  Plaintiff in his response agrees that he cannot maintain a § 1983 action against the City of Wildwood "for having a policy or custom of failing to adequately train its officers," or Chief Fisher "as a policy maker and supervisor in his capacity of Wildwood Chief of Police."  Therefore, plaintiff's claims against the City of Wildwood and Chief Joseph Fisher are dismissed.

---

[2] A municipality can be liable for claims brought pursuant to § 1983 only if it is shown that a municipal policy or custom caused the constitutional injury. See e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993); Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007).  In order to bring a claim of failure to train, a plaintiff must: "(1) identify the deficiency; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." See e.g., Malignaggi v. County of Gloucester, 855 F. Supp 74, 77 (D.N.J. 1994) (citing City of Canton v. Harris, 489 U.S. 378, 391 (1989); Colburn v. Upper Darby Township, 946 F.2d 1017 (3d Cir. 1991)).

### C. State Law Claims

Defendants also argue that plaintiff's state law claims should be dismissed for failure to provide timely notice under the New Jersey Tort Claims Act, see N.S.J.A. 59:8-8, and on the merits. Plaintiff in his response states that his state law claims will not be pursued. Thus, plaintiff's state law claims are dismissed.

### D.  § 1983 Claims Against Defendants Lt. David Spiegel and Pltm. Paul Zielinski

Plaintiff narrows his claims down to a violation of his Fourth Amendment rights, as guaranteed by the Fourteenth Amendment, by state actors Spiegel and Zielinski in arresting him without probable cause.[3] See Stanford v. State of Texas, 379 U.S. 476, 481 (1965) (concluding that it is well settled that "... the fundamental protections of the Fourth Amendment are guaranteed by the Fourteenth Amendment against invasion by the States)(citations omitted). Defendants argue that no constitutional violation occurred and, therefore, they are entitled to the defense of qualified immunity.

#### 1. Standard for Qualified Immunity

The standard for qualified immunity is as follows:

---

[3] Plaintiff also states that to the extent that defendants interpreted his allegations as claims for violation of his Fourteenth Amendment right to enjoy equal protection of the laws or as claims against defendants in their official capacities, those claims are not being pursued. Plaintiff also states that he is not pursuing any conspiracy claim against defendants.

> Qualified immunity protects law enforcement officers from being tried for actions taken in the course of their duties.  If the immunity applies, it entitles the officer to be free of the 'burdens of litigation.' But the immunity is forfeited if an officer's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' To determine ... whether the officers have lost their immunity, we must engage in a two step analysis. First, we must decide 'whether a constitutional right would have been violated on the facts alleged'... Second, if we believe that a constitutional violation did occur, we must consider whether the right was 'clearly established.'  The question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This is an objective inquiry, to be decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004) (internal citations omitted).

Thus, in order to determine whether plaintiff's claims against the officers are viable, it must first be determined whether the officers violated plaintiff's constitutional rights. Then, if a constitutional right has been infringed, it must be determined whether that right was "clearly established" at the time of the constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating that because qualified immunity is "an immunity from suit rather than a mere defense to liability ... we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in

litigation."). Also, qualified immunity "...is broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007)(citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J., dissenting) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

### 2. Probable Cause

Plaintiff argues that his Fourth Amendment rights were violated when defendants arrested him for attempted burglary and for obstruction of justice without probable cause.[4] The Fourth Amendment right to be free from arrest without probable cause is clearly established. See Mitchell v. Obenski, 134 Fed.Appx. 548, 550 (3d Cir. 2005)(citations omitted). Therefore, it must be determined whether probable cause existed to arrest plaintiff.

"Reasonable suspicion and probable cause are determined with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest." U.S. v. Laville, 480 F.3d 187, 194 (3d Cir. 2007) (citing Devenpeck v. Alford, 543 U.S. 146, 152,(2004); Florida v. J.L., 529 U.S. 266, 271 (2000). The arresting officer does not need to know at the time of the arrest how the defendant will ultimately be charged. Id. "The appropriate inquiry, rather, is whether the facts and

---

[4] Plaintiff does not dispute defendants' position that the Terry stop of plaintiff to question him about the burglary was proper.

circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action." Id. (citing Devenpeck, 543 U.S. at 153. A "common sense approach" is applied based on the totality of the circumstances to determine whether probable cause existed for an arrest. See Pittman v. McDuffy, 240 Fed.Appx. 524, 527 (3d Cir. 2007). "A district court ... may conclude that probable cause exists as a matter of law and grant summary judgment if the evidence, when viewed in the light most favorable to the plaintiff, would not reasonably support a contrary factual finding." Id. (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, the facts and circumstances known by the officers at the time of plaintiff's arrest establish that probable cause existed to arrest plaintiff for the crime of attempted burglary.[5]

---

[5] Under N.J.S.A. 2C:18-2(a), a person is guilty of burglary if, with purpose to commit an offense therein he:
(1) Enters a research facility, structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter; or
(2) Surreptitiously remains in a research facility, structure, or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so.

The definition of "structure" under N.J.S.A. 2C:18-1 includes a car or vehicle.

Under N.J.S.A. 2C:5-1(a):
A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

Officers Spiegel and Zielinski heard the dispatcher's call about an attempted burglary near Alfe's Restaurant. Officer Zielinski spoke to Frank Alfe, an eye witness, who stated that he observed plaintiff attempting to break into his mother's car. Mr. Alfe also provided a description of the suspect and stated that he just left the parking lot. Zielinski radioed this information to Spiegel. Spiegel saw the plaintiff who matched the description of the suspect and who was approximately 500 feet from the restaurant. Spiegal and Zielinski repeatedly told plaintiff that they were investigating an attempted burglary at Alfe's Restaurant and asked him his name to which plaintiff did not initially respond. Plaintiff was then taken back to the parking lot and positively identified by Frank Alfe.

Plaintiff argues that the officers should not have believed the statements made by Frank Alfe because he was a known drug

---

(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;

(2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

user.[6] Plaintiff has not provided any evidence that the officers had reason to believe that Frank Alfe was under the influence of drugs at the time that he called the police to report the burglary, when he gave the description of the suspect to Officer Zielinski, when he positively identified plaintiff when he was brought back to the parking lot, or that they had any other reason to doubt the credibility of his story.[7] See S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002) (stating "if a moving party has demonstrated the absence of a genuine issue of material fact - meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole - concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must present affirmative

---

[6] To the extent that plaintiff is arguing that the Court should not find Frank Alfe a credible witness because he was a drug user, that argument must fail. The Court cannot make credibility determinations on summary judgment. See Ballo v. Addecco, No. 05-5734, 2006 WL 1876569, at *5 (E.D. Pa. July 5, 2006)(stating "[a]t the summary judgment stage, the Court may not determine the credibility of witnesses."). The issue here is not whether Alfe is a credible witness based on some objective standard applied now but rather at the time the officers took his statement, whether they had any reason to doubt his credibility. There is no evidence that Mr. Alfe was under the influence of drugs or otherwise lacked credibility at the time he gave his statement. Even if Mr. Alfe used drugs in the past, past history of drug use alone does not make a witness unreliable if there is no other indicia of unreliability.

[7] In his deposition, Mr. Alfe was asked if he was on drugs on September 27, 2003, and he responded "no" and that he had been clean at that time for about three years. He also testified that he was not on drugs at the time of his deposition. Plaintiff has not disputed these facts.

14

evidence in order to defeat a properly supported motion for summary judgment.'") (citing Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)).

Plaintiff also argues that his failure to respond to the officers' questions cannot establish probable cause.  Even assuming that mere failure to respond to an officer's questions is, standing alone, proof of nothing and would not justify an arrest of any kind, the un-controverted facts in the this case establish something more.  Plaintiff's admitted silence occurred in the context of a valid investigatory stop made by two officers who made clear that they were investigating an attempted burglary in a parking lot the defendant had just left and that he matched the description of the suspect.  Although he would later claim that Alfe proposed a drug transaction, plaintiff does not allege he brought this alleged incident to the attention of the officer at the time of the investigatory stop.  A reasonable person would ask why an individual approached by two officers and identified as a suspect in a burglary would not disclose that he had just been approached by someone in the same parking lot who wanted to buy drugs.  Under these circumstances taken as a whole and taking all reasonable inferences in favor of plaintiff, his silence and uncooperativeness with the officers coupled with the fact that he fit the description of the suspect from an eye witness, was

personally identified by that witness in close temporal proximity to the alleged incumbent, and was located by police approximately 500 feet from the parking lot shortly after receiving a call about an attempted burglary provides the requisite probable cause.[8]

We also conclude that probable cause existed with regard to the charge of obstruction of justice.  Plaintiff testified in deposition that he could not recall how many times his fingerprints were taken.  This stands as a failure to contest the fact asserted by the officers that it took four attempts to fill the card because of the plaintiff's unwillingness to assist in the effort.  Under N.J.S.A. 2C:29-1(a)[9] a person is guilty of

---

[8] Plaintiff also complains that the officers did not examine the vehicle for signs of forced entry such as broken glass before they arrested plaintiff.  Since there was no indicia of unreliability from the complaining witness who positively identified plaintiff, and plaintiff did not provide any information to dispute the witness's account, probable cause existed in this case even without an inspection of the vehicle.  Moreover, the officers testified that smudged fingerprints were seen on the driver's side door handle and window but that weather conditions were not conducive to lifting the prints.

[9] Under N.J.S.A. 2C:29-1(a):

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.  This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative

16

obstruction of justice if he physically interferes with the administration of law or other governmental function.  See State v. Camillo, 887 A.2d 1151, 1153-54 (N.J.Super.A.D. 2005) (interpreting the statute to have a physical component: "by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act").  The right of the police to fingerprint citizens in lawful custody has long been established and serves an important public purpose.  See Roesch v. Ferber, 137 A.2d 61, 64-65 (N.J.Super A.D. 1957).  The officers were attempting to take plaintiff's fingerprints as part of their legitimate law enforcement and plaintiff physically prevented them from doing so several times.[10]

---

    interference with governmental functions.

[10]  During plaintiff's criminal trial held in Cape May County, NJ, on February 4, 2004, Officer Zielinski testified that as they were trying to place plaintiff's fingers on the fingerprint card, plaintiff would swipe and smear his fingers on the card so that a print could not be taken. Trial Tr. at 33-34. Officer Zielinski further testified that he had to re-do the process at least four times until he got a clear set of fingerprints. Id. When asked by the Judge what happened while defendants were fingerprinting him, plaintiff responded, "What do you mean what happened during the procedure? I gave him my fingerprints.  I got the card right there.  No, I didn't sign it." Trial Tr. at 70.  Plaintiff did not contradict the testimony of Officer Zielinski.  Based on the testimony during trial, the judge stated:
    I'm satisfied that the actions by defendant at the police station during the fingerprinting procedures were purposeful.  He purposely was obstructing the officer's attempts to fingerprint him by forcefully smudging the fingerprinting cards ... I'm satisfied

17

In essence, the plaintiff was physically uncooperative with the officers and his actions were purposeful. Based on these uncontroverted facts, and applying an objective standard, we hold that officers had probable cause to charge plaintiff with obstruction of justice.[11]

Finally, although the charge of attempted burglary was downgraded and he was found not guilty of disorderly conduct and ultimately found not guilty of obstruction of justice, that does not prove that probable cause did not exist to arrest plaintiff. See Hunter v. Bryant, 502 U.S. 224 (1991) (stating that "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)); Simmons v. Poltrone, No. 96-8659, 1997 WL 805093, at *7 (E.D.Pa. Dec. 17, 1997) (finding that arrest based on probable cause would be justified regardless of whether the individual arrested was guilty or not). Therefore, even taking all reasonable inferences

---

    that those actions by the defendant were purposeful and
    with the purpose to interfere or obstruct the officer,
    Officer Zielinski, from completing the fingerprinting
    procedures. Therefore, I am satisfied beyond a
    reasonable doubt that the defendant violated New Jersey
    statute 2C:29-1.
Trial Tr. at 77.

[11] Since we find probable cause existed to charge plaintiff with obstruction of justice based on his purposeful behavior in obstructing the officer's attempts to fingerprint him, we do not decide whether the act of refusing to sign the fingerprint card presented probable cause for obstruction of justice.

in favor of plaintiff, plaintiff has not shown that the officers violated his constitutional rights by making arrests without probable cause.  Accordingly, the officers are entitled to qualified immunity.

## IV.   CONCLUSION

For the above reasons, defendant's motion for summary judgment is granted.  An Order consistent with this Opinion will be entered.

 s/Noel L. Hillman         
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey